UNITED STATES DISTRICT COURT
 EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------
DIANE AMAROSA,

        Plaintiff,

-against-

AMERICAN NATIONAL RED CROSS,
AMERICAN RED CROSS IN GREATER
NEW YORK, AMERICAN RED CROSS,
SUFFOLK COUNTY CHAPTER, and
DAVID D'ORAZIO,

        Defendants.
-----------------------------------------------------------X

**MEMORANDUM AND ORDER**
11-CV-3289(DRH)(WDW)

**A P P E A R A N C E S :**

**For the Plaintiff:**
**TUCKNER, SIPSER, WEINSTOCK & SIPSER**
120 Broadway
18th Floor
New York, New York 10271
By:    William J. Sipser, Esq.

**For the Defendants:**
**ECKERT SEAMANS CHERIN & MELLOTT LLC**
1717 Pennsylvania Ave., Nw
12th Floor
Washington, DC 20006
By:    Jeffrey W. Larroca, Esq.
        Nicholas T. Moraites, Esq.
        Michael A. Graziano, Esq.
        Riyaz Gulan Bhimani, Esq.


**HURLEY, Senior District Judge:**

Plaintiff  Diane Amarosa ("Amarosa" or "plaintiff") commenced this action in state

court against defendants American National Red Cross ("National"), American Red Cross in

Greater New York (the "Region"), American Red Cross, Suffolk County Chapter (the

1

"Chapter"), and David D'Orazio (collectively "defendants") asserting claims of age

discrimination in violation of New York's Human Rights Law ("NYSHRL"), Executive Law §

296 and breach of contract claims based on plaintiff's employment contract. Defendants

subsequently removed the action to this Court pursuant to 36 U.S.C. § 300105(a)(5), conferring

original jurisdiction on federal courts over all cases to which the Red Cross is party. *See*

*American Nat'l Red Cross*, 505 U.S. 247, 248 (1992). Presently before the Court is

defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56

("Rule 56") seeking dismissal of all of plaintiff's claims. For the reasons set forth below, the

defendants' motion is granted.

### BACKGROUND

The following facts, drawn from the parties' Local Rule 56.1 statements, the pleadings,

and evidentiary submissions, are undisputed unless otherwise noted.

*Plaintiff's Employment*

Plaintiff was hired by defendants in 1983 as Assistant to the Director of Health and

Safety Services at Defendant Suffolk County Red Cross. Throughout plaintiff's employment

she received positive performance reviews from her supervisors and yearly merit increases and

bonuses. In 1997, plaintiff was promoted to the Chapter's highest management position,

Executive Director (also referred to as "CEO").

According to plaintiff, in or about the end of September or beginning of October 2004,

Jonathan Bostwick, the then Chairman of the Chapter's Board, and William Miller, the Board

Treasurer, held a breakfast meeting with plaintiff at a local diner during which they presented

her with an employment contract ("the Contract"). The Contract stated, *inter alia*, that plaintiff

was to receive a minimum salary of $150,000 per year until the Contract's expiration on

September 3, 2015.  Section 7 of the Contract provided that "[s]hould this contract be terminated prior to September 3, 2015," plaintiff would be compensated "$150,000 per year for each year remaining in contract" as well as receive "[p]ayment for any unused sick and personal days up to a maximum of 220 days."  (Defs.' Ex. 1-K.)  Plaintiff took the contract with her and read it over.  According to plaintiff, after an October 12, 2004 meeting of the Chapter's Board of Directors, Miller approached plaintiff and asked whether she wanted to sign the Contract.  Plaintiff responded in the affirmative, and Miller and Bostwick both signed the Contract.  Miller and Bostwick, however, testified that they have no recollection of any employment contract involving plaintiff.

*Plaintiff's Termination*

Deborah Leggio ("Leggio") reported directly to plaintiff until she resigned from the Chapter in December of 2009.  Plaintiff authorized the issuance of an ATM card linked to the Chapter's operating account to Leggio.  According to defendants, Leggio used the ATM card to embezzle approximately $274,000 in increments between 2004 and 2009.  Although defendants claim that plaintiff was negligent in discovering the fraud, plaintiff claims that she was not negligent as matters concerning the financial statements and/or bank statements were assigned to Leggio and a part-time bookkeeper.  Moreover, she notes that none of the outside accounting firms that reviewed the Chapter's financial statements revealed Leggio's embezzlement.  Defendants argue, however, that the fraud could have been avoided if plaintiff had been aware of Leggio's criminal background which included a prior conviction for grand theft for stealing from a prior employer.  Although at the time Leggio was hired the Chapter did not require criminal background checks of its employees, the Chapter later mandated that all new and current employees, including Leggio, be checked.  Defendants claim that plaintiff

3

delegated the task of performing criminal background tasks on existing employees to Leggio.

Plaintiff insists that Leggio did not perform her own background check, however, she admits

that she never reviewed Leggio's criminal background check. It is undisputed that the

background check revealed Leggio's grand theft conviction.

According to defendants, Theresa Bischoff, the CEO of the Region, determined that

plaintiff should be terminated as a result of, *inter alia*, her negligence in failing to discover and

prevent Leggio's embezzlement.[1] On May 24, 2010, however, the Chapter's Board met and

voted to offer plaintiff the opportunity to retire. On or about May 25, 2010, Bischoff and

David D'Orazio, the Board Chairman at that time, met with plaintiff in plaintiff's office and

informed plaintiff that they wanted her to retire. Plaintiff indicated that the she did not want to

stay where she was not wanted, but that she expected the Contract to be honored. Plaintiff

argues that the request that she retire is evidence of age discrimination. She also claims that

D'Orazio and Bischoff made previous comments to her suggesting that she should retire and

that she was too old to continue working effectively, discussed in more detail below.

Plaintiff refused to retire and was terminated on June 1, 2010. Thereafter, defendants

did not compensate plaintiff for unpaid salary as provided for in the Contract.

## *DISCUSSION*

### I. Applicable Law and Legal Standards

Summary judgment pursuant to Rule 56 is only appropriate where admissible evidence

in the form of affidavits, deposition transcripts, or other documentation demonstrates the

absence of a genuine issue of material fact, and one party's entitlement to judgment as a matter

---

[1] Defendants assert secondary reasons for plaintiff's termination including that plaintiff
provided false information to a mortgage lender on behalf of Leggio and failed to disclose that
another employee was her daughter despite the fact that she was in charge of her daughter's
performance reviews and had given her daughter a promotion.

of law.  *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994).  The relevant governing law in each case determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor.  *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996) (citing Fed. R. Civ. P. 56(c)).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there is a genuine issue of material fact to be tried.  *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996).  The non-movant must present more than a "scintilla of evidence," *Delaware & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts*," Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (*quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)),  and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted).

The district court, in considering a summary judgment motion, must also be "mindful . . . of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because "the evidentiary

5

burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions. *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). Where the non-moving party will bear the ultimate burden of proof on an issue at trial, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim. *Id*. at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish her claim, the burden shifts to the non-movant to offer "persuasive evidence that [her] claim is not 'implausible.'" *Id*. at 211 (quoting *Matsushita*, 475 U.S. at 587).

Summary judgment is generally inappropriate where questions of the defendant's state of mind are at issue, *Gelb v. Bd. of Elections of the City of N. Y.*, 224 F.3d 149, 157 (2d Cir. 2000), and should thus be granted with caution in employment discrimination cases. *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994); *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 134 (2d Cir. 2000). Nonetheless, "summary judgment remains available to reject discrimination claims in cases lacking genuine issues of material fact." *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 40 (2d Cir. 1994). "The summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985). "[T]he salutary purposes of summary judgment — avoiding protracted, expensive and harassing trials — apply no less to discrimination cases than to commercial or other areas of litigation." *Id*. "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo*, 22 F.3d at 1224.

**II. Plaintiff's Discrimination Claim**

      A.     *Legal Standard*

Age discrimination claims brought under the NYSHRL are analyzed in the same manner as federal discrimination claims under the Age Discrimination in Employment Act ("ADEA"). ADEA claims are analyzed according to the *McDonell Douglas* burden-shifting framework set forth in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802-804 (1973). Under *McDonnell Douglas* and its progeny, a plaintiff must first establish a *prima facie* case of discrimination by showing: (1) she belonged to a protected class, (2) was qualified for the position she held or sought, and (3) suffered an adverse employment action (4) under circumstances giving rise to an inference of discriminatory intent. *Terry v. Ashcroft*, 336 F.3d 128, 137-38 (2d Cir. 2003). The burden of establishing a *prima facie* case of employment discrimination has been described as "modest," *Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994), or even "minimal." *Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168 (2d Cir. 2001). It is a burden of production, not persuasion, and involves no credibility assessments. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000).

If the plaintiff establishes a *prima facie* case, the burden then shifts to the employer to "articulate some legitimate, nondiscriminatory reason for [the adverse act]." *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 499 (2d Cir. 2009) (internal quotation marks omitted). The employer's burden of showing a legitimate non-discriminatory reason for its actions is not a particularly steep hurdle. Federal courts do not have a "roving commission to review business judgments," *Mont. v. First Fed. Sav. & Loan Ass'n of Rochester*, 869 F.2d 100, 106 (2d Cir. 1989) (quoting *Graefenhain v. Pabst Brewing Co.*, 827 F.2d 13, 21 n.8 (7th Cir. 1987)), and thus, "[e]vidence that an employer made a poor business judgment . . . generally is insufficient

to establish a question of fact as to the credibility of the employer's reasons." *Dister v. Cont'l Grp., Inc*., 859 F.2d 1108, 1116 (2d Cir. 1988).

Should the employer satisfy its burden, the *McDonnell Douglas* framework and its presumptions and burdens disappear, leaving the sole remaining issue of "discrimination vel non." See *Reeves*, 530 U.S. at 143. Thus, the Court must "determine, by looking at the evidence [the plaintiff] has proffered and the counter-evidence [the defendant] has presented, whether [the plaintiff] has raised sufficient evidence upon which a reasonable jury could conclude by a preponderance of the evidence that her age was a 'but for' cause" of the adverse employment action. *Gorzynski v. Jetblue Airways Corp.,* 596 F.3d 93, 107 (2d Cir. 2010).[2] To rebut an employer's proffered non-discriminatory rationale for its actions and withstand summary judgment, a plaintiff must present more than allegations that are "conclusory and unsupported by evidence of any weight." *Smith v. Am. Exp. Co.,* 853 F.2d 151, 154–55 (2d Cir.1988). "To allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all Title VII cases." *Meiri,* 759 F.2d at 998. Although intermediate evidentiary burdens shift back and forth under this framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the

---

[2] In *Gross v. FBL Financial Servs. Inc.*, 557 U.S. 167, 180 (2009), the Supreme Court held that "a plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." In *Gorzynski v. Jetblue Airways Corp.*, the Second Circuit "assume[d] without deciding, that the Supreme Court's *Gross* decision affects the scope of the NYHRL as well as the ADEA." 596 F.3d at 106, n.6. Plaintiff's discrimination claim fails, however, even when applying the less strict causation standard previously applied in age discrimination cases requiring proof that "the defendant's employment decision was more likely than not based in whole or in part on discrimination." *Saenger v. Montefiore Medical Center*, 706 F. Supp. 2d 494, 507 (S.D.N.Y. 2010); *see* analysis *infra*.

plaintiff." *Reeves,* 530 U.S. at 143, 120 S.Ct. 2097.

**B.**     *Application*

Here, defendants contend that plaintiff has failed to meet the fourth element of her

*prima facie* case "because she has no evidence that her termination occurred under

circumstances giving rise to an inference of age discrimination." (Defs.' Mem. in Supp. at 12.)

Plaintiff argues, however, that discrimination can be inferred because the individual she labels

as her "replacement," John Miller, was thirty-five years old at the time of his hiring.

"Generally, a plaintiff's replacement by a significantly younger person is evidence of age

discrimination." *Carlton v. Mystic Trans., Inc.* 202 F.3d 129, 135 (2d Cir. 2000). It is

undisputed, however, that David Little immediately replaced plaintiff as an interim CEO and

was 59 years old at the time. (Pl.'s Mem. in Opp'n at 12-13.) Plaintiff's replacement with

Little does not raise an inference of discrimination because the one year age difference

between plaintiff and Little is insufficient. [3] *See Heffernan v. Colonie Country Club, Inc.*, 160

A.D.2d 1062, 1063 (3d Dep't 1990) (two year age difference was "insufficient to permit even

an inference of age discrimination"). Although Miller was significantly younger than plaintiff,

he was not her immediate replacement as he did not become the Chapter's permanent CEO

until January of 2011.

Plaintiff insists, however, that age discrimination can be inferred from several

comments that D'Orazio and Bischoff made to plaintiff about her retirement and physical

condition. Plaintiff testified that D'Orazio was constantly asking her when she was retiring. In

addition, she testified that he made statements like, "[t]his job must be really getting to you.

---

[3] Plaintiff concedes that another retired employee served as CEO after Little, but prior
to Miller's hiring. (Pl.'s Mem. in Opp'n at 13, n.23.) Plaintiff does not argue that
discrimination can be inferred from this employee's age.

You really should think about leaving. You know, you put in a lot of hours." (Amarosa Dep. at 134-36.) In addition, plaintiff testified that Bischoff asked her about her plans to retire at a group dinner in Syracuse in 2009 and at a meeting of the Nassau Red Cross in 2009. Moreover, plaintiff claims that discrimination can be inferred because at the meeting in May 2010 after defendants had uncovered Leggio's fraud, Bischoff and D'Orazio told her they wanted her to retire and that she was old enough to collect her pension. (*Id*. at 115.) D'Orazio in his deposition, admitted that at that meeting "it was expressed that [plaintiff] had to resign or retire." (D'Orazio Dep. at 44.) Defendants contend, however, that this statement had nothing to do with age discrimination, but was clearly an attempt to spare plaintiff the embarrassment of being fired.

Plaintiff testified to additional statements D'Orazio made regarding plaintiff's physical condition. For example, she testified that on a trip to Albany for a state relations meeting, plaintiff had a difficult time getting out of a Hummer, and D'Orazio stated to her, "[p]arts of you really don't work at all." (Amarosa Dep. at 134-35.) Plaintiff testified that during a dinner on the same trip, D'Orazio told plaintiff in reference to other CEOs "[a] lot of these people are younger than you." (*Id*. at 138-39.) Plaintiff also stated that at a fund-raiser road rally in the fall of 2009, D'Orazio told her "don't trip in one of the holes or you will have more problems with your knee." (*Id*. at 147.) According to plaintiff, D'Orazio also stated in her presence that he did not like fat women. (*Id*. at 135.)

"Verbal comments constitute evidence of discriminatory motivation when a plaintiff demonstrates that a nexus exists between the allegedly discriminatory statements and a defendant's decision to discharge the plaintiff." *Schreiber v. Worldco, LLC*, 324 F. Supp. 2d 512, 518 (S.D.N.Y. 2004). On the other hand, "stray remarks, even if made by a

decisionmaker, do not constitute sufficient evidence to make out a case of employment discrimination." *Danzer v. Norden Sys.*, 151 F.3d 50, 56 (2d Cir. 1998). Therefore, "[i]n determining whether a comment is a probative statement that evidences an intent to discriminate or whether it is a non-probative 'stray remark,' a court should consider the following factors: (1) who made the remark, *i.e.*, a decisionmaker, a supervisor, or a low-level co-worker; (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark, *i.e.*, whether a reasonable juror could view the remark as discriminatory; and (4) the context in which the remark was made, *i.e.*, whether it was related to the decisionmaking process." *Schreiber*, 324 F. Supp. 2d at 519.

Here, the only comment that plaintiff alleges took place in close temporal proximity to her termination was D'Orazio and Bischoff's request that plaintiff retire during the May 2010 meeting. Moreover, even assuming that D'Orazio and Bischoff had decision-making authority over plaintiff's termination, plaintiff has not presented any evidence that the other alleged remarks were at all related to the decision to terminate plaintiff. Furthermore, the comments about plaintiff's knees and mobility relate to plaintiff's physical ailments and do not necessarily imply that defendants discriminated against plaintiff because of her age. Indeed, D'Orazio's remark about fat women, while not appropriate, does not indicate age discrimination.

Even assuming, however, that plaintiff has raised a genuine issue of fact that D'Orazio and Bischoff's comments coupled with the fact that Miller eventually took over plaintiff's position raises an inference of discrimination for purposes of a *prima facie* case, no reasonable juror could conclude by a preponderance of the evidence that defendant's proffered reasons for firing plaintiff were pretextual and that age was the real reason for terminating plaintiff's

11

employment. As defendants explain, they determined that D'Orazio should be terminated

because she was negligent in discovering and preventing Leggio's embezzlement, and they

offered plaintiff the option of retiring in order to protect her reputation. Although plaintiff

argues that she was not negligent and that at the time the background check policy was

instituted it was another employee's duty to conduct the checks, plaintiff has not presented any

evidence "establish[ing] that the employer did not honestly believe the reasons it gave for

terminating [her] . . . and that age tipped the balance in favor of discharge." *Hardy v. Gen.*

*Elec. Co.*, 270 A.D.2d 700, 703 (3d Dep't 2000) (internal quotation marks and citations

omitted). Moreover, although plaintiff disputes her responsibility for Leggio's fraud, the

evidence, taken as a whole, is insufficient to support a reasonable inference that prohibited

discrimination occurred. *James v. New York Racing Ass'n.*, 233 F.3d 149, 156 (2d Cir. 2000).

"[C]ourts routinely hold that the mere fact that a younger employee replaces a plaintiff or is

hired instead of the plaintiff does not establish pretext." *Pacenza v. IBM Corp.*, 2009 WL

890060, at *16 (S.D.N.Y. Apr. 2, 2009). Furthermore, as discussed above, the only additional

evidence of discrimination that plaintiff provides is her testimony regarding defendants'

comments. However, for the reasons already expressed these remarks carry little probative

weight. In particular, the request at the May 2010 meeting that plaintiff retire is insufficient to

withstand summary judgment in light of D'Orazio's testimony and the minutes from the May

24, Chapter Board meeting evidencing that the organization sought plaintiff's retirement in an

effort to spare her embarrassment and out of good will due to her services to the organization.

(D'Orazio Dep. at 41-42; Defs.' Ex. 1-V, Minutes from May 24, 2010 Chapter Board

Meeting.) As a result, "no rational factfinder could conclude that the [defendants'] action was

discriminatory." *James*, 233 F.3d at 156 (internal quotation marks and citation omitted);

*Minkinberg v. Bemis Co.*, 555 Fed. App'x 34, 36 (2d Cir. 2014) ("Although the parties clearly

disagree whether [plaintiff] was properly held responsible for the [theft], the evidence supports

an inescapable inference that [the theft] – and not [plaintiff's] age – were the primary or even

sole reason for [her] termination." ).

Furthermore, plaintiff's claim is undermined by her admission at her deposition that she

"should have been disciplined for the theft" and that she believes she was terminated "because

of the theft." (Amarosa Dep. at 130.) Plaintiff attempts to correct her testimony via an errata

sheet where she alters her testimony to state that "I assumed it was because of the theft that the

Red Cross claimed it was firing me, but as I wasn't responsible for the theft, I believe it was

age related." In addition, via the errata sheet she changed her answer to the question do you

believe you were terminated for "[a]ny other reason [than the theft]" (Amarosa Dep. at 130)

from "no" to "yes, my age." Plaintiff, however, cannot rely on the errata sheet to eradicate her

original responses. Although Rule 30(e) allows deponents to make "changes in form or

substance," (Fed. R. Civ. P. 30(e)(1)(B), "[n]othing in the language of Rule 30(e) requires or

implies that the original answers are to be stricken when changes are made." *Podell v. Citicorp*

*Diners Club, Inc.*, 112 F.3d 98, 103 (2d Cir. 1997) (internal quotation marks and citations

omitted). As a result, plaintiff's alterations do not take the place of the original answers, but

become part of the record. *Id*. Furthermore, plaintiff's effort to recant her original testimony

"does not weigh enough in the balance to create an issue of fact for a jury." *Id*.

III.    **Plaintiff's Contract Claims**

Plaintiff claims that she is entitled to the post-termination payments provided for in the

Contract. Defendants respond that "plaintiff's alleged employment contract cannot be

enforced because it was never approved during a duly-called meeting of the Chapter's board."

(Defs.' Mem. in Supp. at 22.)  Additionally, defendants claim that the Contract cannot be enforced because "[e]ven if the Chapter's board of directors did authorize the contract, it did so without authority" of the Red Cross, who "retained authority to fix plaintiff's compensation." (*Id.*)

"A corporation can only act through its directors, officers and employees. . . . Therefore in every action in which a person sues a corporation on a contract executed on behalf of the corporation by one of its officers, one of the issues to be determined is whether the officer had the express, implied or apparent authority to execute the contract in question." *Goldenberg v. Bartell Broadcasting Corp.*, 47 Misc. 2d 105, 108 (N.Y. Sup. 1965).  Moreover, "the burden rests upon the [party] suing a corporation on a contract, to establish the authority of the corporate officer to execute the contract." *Id.*

Here it is clear from Red Cross's policies and procedures that Miller and Bostwick did not have authority to enter the contract.  National's Board of Governor's Policy Manual explicitly provides that "Chapters are not permitted to enter into employment contracts or severance agreements with a Chapter Executive without the express approval of the President and CEO [of National]."  (Defs.' Ex. 2-B §§ 2.17.2, 2.17.5.)  Additionally, according to the Chapter's bylaws the Executive Committee has the power to act only via a quorum consisting of three members of the Executive Committee.  (Defs.' Ex. 1-L § 5.12.)  Plaintiff has not presented any evidence that National approved the Contract.  Moreover, both instances where the plaintiff met with Miller and Bostwick concerning the Contract occurred outside the construct of a formal board meeting, and only two members of the Executive Committee, Miller and Bostwick signed the Contract.  Furthermore, defendants have presented several affidavits from Chapter board members as well as the minutes from the October 12, 2004

board meeting representing that the Contract was never presented to the board of directors for approval. (Defs.' Ex. 1-I; 1-Y.) Although the Contract itself states that "the Executive Committee recommends and endorses" the agreement, plaintiff has not presented any testimony or other evidence establishing that the Executive Committee actually did recommend the Contract let alone even consider it at a meeting. (Defs.' Ex. 1-K.) Moreover, there is no evidence that National or the Chapter expressly granted Miller and Bostwick authority to act outside of the constructs of the bylaws and guidelines.

The Court next examines, however, whether Miller and Bostwick had implied authority and/or apparent authority to enter the contract. The Second Circuit stated in *Gumpert v. Bon Ami Co.*, 251 F.2d 735, 738 (2d Cir. 1958) that an executive committee position does not "normally carr[y] with it the inherent power to hire corporate officers, for that authority is normally invested in the board or committee as a body." (collecting cases). Plaintiff argues, however, that Miller and Bostwick as the Treasurer and Chairman of the Board, respectively, had "apparent authority to enter into the Contract." (Pl.'s Mem. in Opp'n at 20). Plaintiff relies primarily on *Odell v. 704 Broadway Condominium*, 284 A.D.2d 52, 57 (1st Dep't 2001), where the court found that "a president of a corporation has apparent authority to act within the general scope of his office and such acts are binding on the corporation against one who does not know of any limitation on the president's true authority." *Odell*, however is distinguishable from the case at hand. The contract in *Odell* did not involve an employment contract, and as noted above, the Second Circuit has stated that executives of corporations do not have inherent power to enter into employment contracts. *See Gumpert*, 251 F.2d 738. Furthermore, unlike the plaintiff in *Odell* who was an outsider to the corporation, the plaintiff here was a high-ranking insider. As noted in *Odell*, a contract entered into upon a corporate

15

officer's apparent authority is binding only against one who does not know of any limitations

on that officer's authority. 284 A.D.2d at 57; *Goldenberg*, 47 Misc. 2d at 113 ("The right of a

third party to rely on the apparent authority of a corporate officer is subject to the condition

that such third person has no notice or knowledge of a limitation on such authority.")

Although plaintiff claims to have been unaware of the bylaws and Red Cross guidelines, the

"plaintiff is not a naïve person, uninitiated in the business world, nor is [she as the Executive

Director] without knowledge of corporate financing or business practices." *Goldenberg*, 47

Misc. 2d at 112. Due to her position and experience in the company she had reason to question

whether the Contract, which was presented to her at a breakfast meeting at a diner and outside

of any formal work setting, was authorized by the Chapter or National. Moreover, she is

charged with notice of the bylaws and Red Cross guidelines expressing that Miller and

Bostwick did not have the authority to enter into an employment contract with her. *Id*. at 113

("Those who contract with a corporation do so with knowledge of the statutory conditions

pertaining to a corporation."); *see Traitel Marble Co. v Brown Bros.*, 159 A.D. 485, 487 (1st

Dep't 1913) (finding that "the general proposition holds true that persons dealing with the

officers and agents of a corporation are bound to take notice that their powers are derived from

statutes, by-laws or usages which more or less define the extent of their authority"). As a

result, since plaintiff has not raised a genuine issue of fact as to the Contract's enforceability,

plaintiff's contract claims are dismissed.

## *CONCLUSION*

For the foregoing reasons, defendants' motion for summary judgment pursuant to Rule

56 is granted in its entirety.

**SO ORDERED.**

Dated: Central Islip, New York
July 24, 2014

/s/
Denis R. Hurley
United States District Judge